UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUMOTEXT CORP.,<br><br>    Plaintiff,<br><br>v.<br><br>ZOOVE, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-01370-BLF<br><br>**ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER; AND SETTING HEARING ON MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Re: ECF 15] |

Plaintiff Sumotext Corporation seeks a temporary restraining order ("TRO") and, ultimately, a preliminary injunction to prevent Defendants Zoove, Inc. and Virtual Hold Technology ("VHT") from terminating Plaintiff's leases of fifty-two "StarStar" numbers. StarStar numbers are vanity mobile dial codes that begin with "**" – for example, **LAW or **MOVE. Defendant Zoove is the exclusive operator and administrator of StarStar numbers for AT&T, Verizon Wireless, T-Mobile, and Sprint. Plaintiff leases StarStar numbers from Zoove and then subleases them to end users along with marketing and syndication services. Zoove has notified Plaintiff that it will terminate Plaintiff's existing StarStar leases and make them available for lease by the public as of April 1, 2016. Plaintiff claims that Zoove does not have the right to terminate Plaintiff's StarStar leases under the contracts governing the parties' relationship.

For the reasons discussed below, the application for TRO is GRANTED and a hearing on the motion for preliminary injunction is HEREBY SET for April 14, 2016 at 2:00 p.m.

## I. BACKGROUND

Plaintiff is a provider of mobile marketing software and services. Miller Decl. ¶ 2, ECF 15-4. Its clients include Starbucks, Avis/Budget Group, Guitar Center, Southwest Airlines, Humana, and All My Sons Moving and Storage. *Id.* Plaintiff began leasing StarStar numbers from Zoove in 2012. *Id.* ¶ 8. Plaintiff subleases those StarStar numbers to its clients along with other services. Compl. ¶ 4.

In 2014, non-party Mblox acquired Zoove as a wholly owned subsidiary. Miller Decl. ¶ 9, ECF 15-4. In April 2015, Plaintiff and Mblox entered into new written contracts governing their relationship, including the StarStar Toolkit Service Order, which described a means by which Plaintiff can lease specific StarStar numbers through a web portal. StarStar Toolkit Service Order, Exh. 2 to Haydon Decl., ECF 22-4. The StarStar Toolkit Service Order states that it commences on the Service Order Effective Date (January 1, 2015), continues for an initial twelve-month term, and then automatically renews for successive twelve-month periods unless either party provides written notice of an intent not to renew. *Id.* The StarStar Toolkit Service Order provides for lease of StarStar numbers on a monthly basis with automatic monthly renewal unless either party provides a one-month written notice of an intent not to renew. *Id.*

Plaintiff claims that in May 2015, Mblox agreed to an oral modification of the written StarStar Toolkit Service Order which, among other things, voided the provision giving *either* party the right to terminate StarStar leases and instead gave Plaintiff the *sole* right to terminate the lease of any StarStar number. Miller Decl. ¶¶ 25-27, ECF 15-4. Plaintiff claims that in reliance on the oral modification, and in exchange for a 25% discount on lease fees, Plaintiff agreed to lease 14 new StarStar numbers and reserve 103 new StarStar numbers. *Id.* Over the next four months, the Plaintiff leased additional StarStar numbers from Zoove by means of written service orders. *Id.* ¶ 29.

It appears that at the time the StarStar Toolkit Service Order was executed, the web portal described therein was not yet operational, and that the web portal still was not operational at the time that the written service orders for additional StarStar leases were executed between May 2015

Case 5:16-cv-01370-BLF   Document 27   Filed 03/31/16   Page 3 of 10

and September 2015. However, the web portal was operational by September 2015, at which time all of Plaintiff's StarStar numbers were transferred to and managed through the web portal described in the StarStar Toolkit Service Order. *Id.* ¶ 31. As of today, Plaintiff leases 52 StarStar numbers from Zoove, some initially leased through written service orders and later transferred to the web portal, and some leased via online web portal orders. *Id.* ¶¶ 31-34.

In December 2015, Defendant VHT acquired Zoove from Mblox. Miller Decl. ¶ 46, ECF 15-4. On February 29, 2016, Zoove's Chief Operating Officer, Tim Keyes, sent Plaintiff's President, Timothy Miller, an email 30-day termination notice with respect to all of Plaintiff's StarStar leases ("Termination Notice"). Termination Notice, Exh. N to Miller Decl., ECF 15-7. The Termination Notice quoted the provisions of the StarStar Toolkit Service Order providing for lease of StarStar numbers on a monthly basis with automatic monthly renewal unless either party provides a one-month written notice of an intent not to renew. *Id.* The Termination Notice also stated that an updated Reseller Agreement would be made available by March 15, 2016, and that new regionally based pricing, as opposed to national pricing, would be offered starting on April 1, 2016. *Id.*

Plaintiff claims that the proposed termination and rate increase are in breach of the parties' agreements as orally modified. Plaintiffs filed this action on March 21, 2016, asserting claims for: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) tortious interference with contractual relationship, (4) unfair business practices under California Business & Professions Code § 17200, (5) fraud, and (6) promissory estoppel. Plaintiff filed the present application for TRO on March 25, 2016. Defendants Zoove and VHT filed opposition to the TRO application on March 28, 2016, denying that the parties' written agreements were orally modified, asserting that they have a contractual right to terminate Plaintiff's StarStar leases and raise lease rates, and arguing that in any event injunctive relief is not an appropriate remedy for an asserted breach of contract.

## II. LEGAL STANDARD

The substantive standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush*

*& Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### III. DISCUSSION

Plaintiff has asserted a number of claims arising out of the parties' course of dealing. However, Plaintiff's application for TRO is based upon Plaintiff's breach of contract claim. *See* Pl.'s Br. at 10, ECF 15-1. Accordingly, the Court evaluates Plaintiff's showing only with respect to the contract claim.

#### A. Serious Questions Going to the Merits

As discussed above, the parties' written StarStar Toolkit Service Order provides that StarStar leases are monthly and renew automatically, but that either party may terminate a StarStar lease by giving a one-month written notice of intent not to renew. Zoove's Termination Notice cites the relevant language from the StarStar Toolkit Service Order. Plaintiff claims that the cited provisions of the StarStar Toolkit Service Order do not govern because those provisions were orally modified in May 2015 to give Plaintiff the sole right to terminate a StarStar lease. As evidence of that oral modification, Plaintiff submits the declaration of its President, Timothy Miller, stating that he negotiated the claimed oral modification via telephone calls and emails with Michael Caffey, an Mblox Executive and Zoove's original Chief Technology Officer; Bruce Bales, Mblox's Senior Vice President for Global Sales and Strategy; and Kirsten Sachs, Mblox's

4

Director of Legal & Sales Operations and in-house Counsel.  Miller Decl. ¶¶ 10-11, 24-28.  Plaintiff also submits copies of the written service orders documenting StarStar leases entered into in the months following the alleged oral modification.  *See* Service Orders, Exhs. G-L to Miller Decl., ECF 16-6 through 16-26.  Those written service orders are consistent with the claimed oral modification in that they expressly provide termination rights *only* to Plaintiff and do *not* grant Zoove the right to terminate the StarStar leases.  Miller Decl. ¶ 29 and Exhs. G-L, ECF 15-4, 16-6 through 16-26.

Defendants contend that Miller's account of the negotiation and agreement for oral modification is inadmissible hearsay.  *See* Defs.' Br. at 8, ECF 22.  The Court notes that while Defendants submit a separate document entitled "Defendants' Objections to Declarations of Adam Cashman [ECF 15-2] and Timothy Miller [ECF 15-4]," those objections do not challenge paragraphs 24-28 of Miller's declaration, in which Miller describes the negotiation and agreement regarding the asserted oral modification to the written StarStar Toolkit Service Order.[1]  Moreover, the Court is not persuaded that Miller's statements regarding negotiations in which he personally participated, and his understanding that those negotiations resulted in an oral modification of the StarStar Toolkit Service Order, would be barred by the hearsay rule.  Finally, as Defendants themselves recognize, a Court "may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."  *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).  Accordingly, the Court does give weight to Miller's declaration statements regarding the asserted oral modification.

Defendants controvert Miller's declaration statements with Miller's own later email admissions that "the new paperwork we signed with mBlox earlier this year said that either party could terminate," and that "our StarStar lease agreements with Zoove do contain a standard mutual

---

[1] Defendants' submission of objections in a separate document violates this Court's Civil Local Rules, which require that evidentiary objections be contained within the opposition brief. *See* Civ. L.R. 7-3.  However, it does not appear that Defendants submitted their evidentiary objections in a separate document in an attempt to avoid the page limits for opposition, as their opposition brief totals only thirteen pages.  The Court in the exercise of its discretion has considered Defendants' separate evidentiary objections, but only to the extent those objections relate to evidence that the Court has relied upon in evaluating Plaintiff's motion.

1  termination clause." Miller Emails, Exhs. 3 and 4 to Hayden Decl., ECF 22-5 and 22-6.
2  Defendants also submit the declaration of Caffey, one of the Mblox executives with whom Miller
3  claims to have negotiated the oral modification. *See* Caffey Decl., ECF 22-1. Caffey states that,
4  "I am not aware of any oral modification to these contracts. It is not and has never been my
5  general business practice, nor was it the general business practice of Mblox or Zoove, to orally
6  modify business contracts with no written record." *Id.* ¶ 5. Caffey also states that "[a]t no time
7  did I understand that the termination clauses had been orally modified." *Id.* ¶ 6.

8        Given this record, containing both evidence that the StarStar lease termination provisions
9  were orally modified and that they were not, the Court cannot conclude that Plaintiff has shown a
10 likelihood of success on the merits of its contract claim. However, Plaintiff has raised serious
11 questions going to the merits of the contract claim. Therefore, the Court evaluates Plaintiff's
12 application for TRO under the alternative formulation articulated by the Ninth Circuit in *Friends*
13 *of the Wild Swan* and its predecessor cases.

14       Before turning to that test, the Court addresses Defendants' arguments that the asserted
15 oral modification is barred because it is not supported by new consideration, does not satisfy the
16 statute of frauds, and is precluded by the parol evidence rule. Defendants rely upon California
17 Civil Code § 1698, which provides in relevant part as follows: "Unless the contract otherwise
18 expressly provides, a contract in writing may be modified by an oral agreement supported by new
19 consideration. The statute of frauds (Section 1624) is required to be satisfied if the contract as
20 modified is within its provisions." Cal. Civ. Code § 1698(c). Miller states in his declaration that,
21 as consideration for and in reliance upon the asserted oral modification, Plaintiff ordered
22 numerous additional StarStar numbers for which it paid $309,000. Miller Decl. ¶¶ 24-28, ECF 15-
23 4. Accordingly, there is evidence in the record that the alleged modification was supported by
24 additional consideration.

25       The statute of frauds renders invalid certain categories of oral contracts, including "[a]n
26 agreement that by its terms is not to be performed within a year from the making thereof." Cal.
27 Civ. Code § 1624 (a)(1). Defendants argue that this provision bars the alleged oral modification,
28 which gives Plaintiff "perpetual" rights in the StarStar leases. However, the alleged oral

modification gives Plaintiff the sole right to terminate its StarStar leases, which by their terms are month-to-month with automatic one-month renewals. Because each lease term is only a month long, the Court is not persuaded that the statute of frauds applies. The Court's ruling on this point is without prejudice to Defendants' renewal of the statute of frauds argument at a future date. Defendants devote only one sentence to the statute of frauds, and Plaintiff has not had an opportunity to respond to the argument. It may be that the argument will be more persuasive if developed more fully.

Finally, with respect to Defendants' parol evidence argument, Defendant rely solely upon *Goodman v. Citizens Life & Cas. Ins. Co.*, a 1967 state appellate decision which relied in part upon the fact that, as then drafted, California Civil Code § 1698 permitted alteration of a written contract only "by a contract in writing, or by an executed oral agreement, and not otherwise." *Goodman*, 253 Cal. App. 2d 807, 817 (1967) (quoting Cal. Civ. Code § 1698). As noted above, § 1698 now expressly provides that "[u]nless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration" so long as the statute of frauds is satisfied. Cal. Civ. Code § 1698(c). The StarStar Toolkit Service Order does not contain an integration clause and does not "otherwise expressly provide" that modifications may not be made orally.

Because Plaintiff has shown that there are serious questions going to the merits, it may obtain a TRO if it also shows that the balance of hardships tips sharply in its favor and that the other two *Winter* factors – irreparable harm and public interest – are satisfied. *Friends of the Wild Swan*, 767 F.3d at 942.

**B.     Balance of Hardships**

Plaintiff's President, Tim Miller, states in his declaration that Plaintiff has paid more than $1 million in StarStar lease fees to Zoove since 2012 and has made significant investments in marketing and promoting its leased StarStar numbers on behalf of its customers. Miller Decl. ¶ 57, ECF 15-4. Miller opines that if Zoove terminates Plaintiff's leases, Plaintiff will lose four years' worth of investments in lease fees and sales, marketing, service, and support. *Id.* Miller believes that if this were to occur, Plaintiff would suffer harm to its reputation and goodwill with

7

respect to all of its customers and services. *Id.* According to Miller, "[w]ithout its StarStar leases, the underlying mobile marketing services that SUMOTEXT provides those customers would be worthless and those relationships would collapse immediately." *Id.* ¶ 58. Miller states that the loss of the StarStar leases would result in an immediate loss of 45% of Plaintiff's revenue, and that even if Plaintiff were to make immediate substantial cuts to head count and expenses, *it is unclear that it could continue as a viable business absent its StarStar leases. Id.* ¶ 60 (emphasis added). Miller also states that Plaintiff could face significant legal exposure from lawsuits by customers who lose their StarStar leases. *Id.* ¶ 64. Based upon this evidence it appears that if the TRO does not issue to prevent Defendants from terminating Plaintiff's StarStar leases, Plaintiff will suffer enormous hardship in the form of loss of reputation and goodwill, potential loss of the business as a whole, and legal exposure to customers' lawsuits.

In contrast, it is not apparent what hardship Defendants will suffer if the TRO issues. Plaintiff currently is paying Zoove more than $75,000 per month in leasing and associated fees. Miller Decl. ¶ 56, ECF 15-4. Zoove may be able to recoup higher lease fees for the StarStar numbers currently leased to Plaintiff, but Zoove does not present evidence as to the amount of fees it will lose. Defendants argue only that Plaintiff is attempting to interfere with "fundamental decisions about Zoove's business." Defs.' Br. at 12, ECF 22. Weighing a brief delay in Zoove's ability to revamp its business model against the potential devastation of Plaintiff's business, the Court concludes that the balance of hardships tips sharply in Plaintiff's favor.

### C. Remaining *Winter* Factors

The remaining *Winter* factors also are satisfied. With respect to likelihood of irreparable harm, Miller's declaration establishes that if Plaintiff's StarStar leases are terminated, Plaintiff will suffer injury to its reputation and goodwill, and may even fold as a business. Defendants argue that money damages will suffice to compensate Plaintiff for any injury, citing to cases holding that money damages are the appropriate remedy for breach of contract and that monetary injury is not normally considered irreparable. *See* Defs.' Br. at 12. While Defendants' statement of black letter law is correct, Defendants ignore the unusual facts of this case. Plaintiff has built its business around subleasing StarStar numbers and providing associated services. Obviously Plaintiff will no

8

longer be able to conduct that business if all of its StarStar leases are terminated. Plaintiff thus has demonstrated a likelihood of irreparable harm absent injunctive relief.[2]

With respect to the public interest, Plaintiff argues that because StarStar numbers have been marketed by, and become associated with, particular companies, suddenly stripping those companies of the StarStar numbers may confuse the market and undermine the public's trust in StarStar numbers as a whole. Defendant argues in opposition that the public has an interest in permitting parties to contract at arms' length and to terminate contracts when permitted to do so by law. While neither of these positions is particularly compelling, the Court finds some merit in Plaintiff's position and notes that to the extent that the public has an interest in enforcing arms' length contracts, the precise terms of the relevant arms' length contracts between the parties in this case have yet to be established.

### D.     Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The parties have not briefed the issue of bond and the Court cannot discern from Defendants' briefing what amount of money it may lose as a result of a brief delay in its planned termination of Plaintiff's StarStar numbers. Accordingly, the Court will require a relatively modest bond in the amount of $25,000 to secure the issuance of the TRO. The parties may brief the issue of bond in connection with Plaintiff's motion for a preliminary injunction.

### E.     VHT

Defendants argue that VHT is not a proper subject of a TRO, because the contracts in question are between Plaintiff and Zoove. While VHT does not appear to be a contracting party, VHT is alleged to be Zoove's parent and the record does not contain sufficient information for the

---

[2] Plaintiff's showing of likelihood of irreparable harm focuses on harm that would flow from loss of its StarStar leases. The Court notes that Plaintiff's proposed order would enjoin Defendants not only from terminating Plaintiffs' StarStar leases but also from raising lease rates. Plaintiff has not shown that an increase in its lease rates would cause it to suffer irreparable harm and, in fact, that type of monetary injury would fall squarely within Defendants' cited authorities holding that potential money damages generally do not warrant injunctive relief.

Court to discern the contours of that relationship. Accordingly, the Court will issue the TRO against both Zoove and VHT. VHT may offer briefing and evidence on this point in connection with Plaintiff's motion for a preliminary injunction.

## IV. ORDER

(1) Plaintiff's application for TRO is GRANTED. Defendants are hereby ENJOINED from terminating Plaintiff's StarStar leases pending a hearing on Plaintiff's motion for preliminary injunction.

(2) Plaintiff may submit supplemental briefing with respect to its motion for a preliminary injunction on or before April 4, 2016.

(3) Defendant may submit supplemental briefing with respect to Plaintiff's motion for a preliminary injunction on or before April 11, 2016.

(4) A hearing on Plaintiff's motion for preliminary injunction is set for April 14, 2016 at 2:00 p.m. in Courtroom 3, 5th Floor, 280 South 1st St., San Jose, CA 95113.

(5) Plaintiff shall provide security in the amount of $25,000. *See* Fed. R. Civ. P. 65(c).

**IT IS SO ORDERED.**

Dated: March 31, 2016

_____
BETH LABSON FREEMAN
United States District Judge