# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| SUMOTEXT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ZOOVE, INC., et al.,<br><br>Defendants. | Case No. 16-cv-01370-BLF<br><br>**ORDER RE PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND DEFENDANTS' MOTIONS TO DISMISS**<br><br>[Re: ECF 123, 142, 146, 148] |

The following motions are before the Court: (1) a motion for leave to amend the complaint filed by Plaintiff Sumotext Corporation ("Sumotext"); (2) a motion to dismiss filed by Defendant Mblox, Inc. ("Mblox"); (3) a motion to dismiss filed by Defendants Zoove Corporation ("Zoove") and Virtual Hold Technology LLC ("VHT"); and (4) a motion to dismiss filed by Defendant StarSteve, LLC ("StarSteve").

## I. BACKGROUND[1]

This action involves the various parties' rights to operate StarStar numbers, which are vanity mobile dial codes such as "**LAW" and "**MOVE." Zoove has the exclusive rights to operate StarStar numbers for AT&T, Verizon Wireless, T-Mobile, and Sprint. Second Am'd Compl. ("SAC") ¶¶ 6, 15-16, ECF 124. Sumotext, a provider of mobile marketing software and services, built a business around leasing StarStar numbers from Zoove and then subleasing them to end-users while providing additional services related to the StarStar numbers. *Id.* ¶¶ 21-28. In

---

[1] The background facts are drawn from Sumotext's factual allegations, which are accepted as true for purposes of evaluating Defendants' motions to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

1 2014, Mblox acquired Zoove as a wholly owned subsidiary. *Id.* ¶¶ 7, 29. During Mblox's ownership, Sumotext continued to lease StarStar numbers and sublease them to its customers while also providing additional services. *Id.* ¶¶ 29-35. However, in 2015 Mblox sold Zoove to an entity known as VHT StarStar LLC ("VHT StarStar"), which allegedly was formed by VHT and StarSteve for the purpose of acquiring Zoove and monopolizing the market for StarStar numbers. *Id.* ¶¶ 7, 10, 66-74. Sumotext claims that VHT, StarSteve, and VHT StarStar intended to and did interfere with Sumotext's existing relationships with its StarStar customers by terminating Sumotext's StarStar leases and persuading Sumotext's customers to deal directly with VHT, StarSteve, and VHT StarStar. *Id.* ¶¶ 75-87, 107-13. Sumotext warned Mblox that VHT, StarSteve, and VHT StarStar were conspiring to exclude Sumotext from the market, and asked Mblox not to sell Zoove, but Mblox nonetheless completed the sale of Zoove to VHT StarStar. *Id.* ¶¶ 88-106.

In November 2016, the Court dismissed Sumotext's first amended complaint ("FAC") with leave to amend. *See* Order Granting Motion to Dismiss, ECF 117. The Court advised Sumotext that leave to amend was limited to the claims asserted in the FAC and it directed Sumotext not to add new claims or parties without express leave of the Court. *Id.* at 6. On January 3, 2017, Sumotext filed a second amended complaint ("SAC") which addresses the deficiencies identified in the Court's dismissal order but also adds a new party, VHT StatStar, and new claims. On the same date that it filed the SAC, Sumotext filed a motion for leave to amend. *See* Motion for Leave, ECF 123. Sumotext's choice to combine into a single document amendments permitted by the Court's dismissal order and proposed amendments requiring leave of court has resulted in a confusing series of briefs in which Defendants have both opposed leave to amend and moved to dismiss Sumotext's old and new claims under Federal Rule of Civil Procedure 12(b)(6). Newly added defendant VHT StarStar has not appeared, presumably because when the SAC was filed Sumotext had not obtained leave to add VHT StarStar as a party and it was not clear that the Court would grant such leave.

The SAC asserts claims for: (1) breach of contract against VHT and StarSteve; (2) breach of contract against Zoove; (3) breach of the implied covenant of good faith and fair dealing against

2

1  Zoove; (4) breach of the implied covenant of good faith and fair dealing against Mblox;
2  (5) tortious interference with contract against VHT, StarSteve, VHT StarStar, and Zoove;
3  (6) monopolization and joint monopolization in violation of the Sherman Act § 2 against Zoove,
4  VHT, StarSteve, and VHT StarStar; (7) conspiracy to monopolize in violation of the Sherman Act
5  § 2 against all defendants; (8) anticompetitive merger under the Clayton Act § 18 against VHT,
6  StarSteve, VHT StarStar, and Zoove; and (9) conspiracy to restrain trade in violation of the
7  Sherman Act § 1 against all defendants. *See* SAC, ECF 124.

Sumotext's motion for leave to amend and Defendants' motions to dismiss are addressed as follows.

## II. SUMOTEXT'S MOTION FOR LEAVE TO AMEND

### A. Legal Standard

Where, as here, the Court's scheduling orders do not set a deadline for amendments to the pleadings, a motion for leave to amend is evaluated under Federal Rule of Civil Procedure 15. *See Soto v. Castlerock Farming & Transp., Inc.*, No. 09-00701, 2011 WL 3489876, at *2 (E.D. Cal. Aug. 9, 2011) ("When the scheduling order does not set a deadline for amendment, Rule 16's good cause standard does not apply."). Rule 15 provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### B. Discussion

With respect to the first factor, undue delay, Defendants contend that Sumotext could have sought to make the proposed amendments earlier. Defendants also note that although Sumotext's

3

motion seeks leave to add only VHT StarStar as a new party and a Sherman Act § 1 claim, the SAC contains other significant changes that arguably are not within the scope of the leave to amend granted by the Court. For example, the SAC adds a new claim for breach of a nondisclosure agreement (Claim 1) and adds existing defendants to claims to which they were not previously parties. In response, Sumotext argues that the defendants affirmatively misled it regarding numerous facts giving rise to this lawsuit, including the existence of VHT StarStar and the fact that VHT StarStar was the entity that purchased Zoove. While the Court cannot resolve these factual disputes at the pleading stage, the Court is satisfied that for purposes of Rule 15 Sumotext has proffered an adequate explanation for the timing of its proposed amendments.

Turning to the second factor, bad faith or dilatory motive, the record does not suggest any bad faith on the part of Sumotext. The third factor, repeated failure to cure deficiencies, does not weigh against amendment because the Court has dismissed Sumotext's claims only once previously. Permitting amendment would not unduly prejudice the parties, the fourth factor, given that this case is still at the pleading stage. And finally, while several defendants argue that leave to amend should be denied under the fifth factor, futility, that argument would require the Court to evaluate the adequacy of Sumotext's claims. Given that the defendants also have moved to dismiss Sumotext's claims under Federal Rule of Civil Procedure 12(b)(6), and in light of the liberal standard for amendment under Rule 15, the Court concludes that the most appropriate course is to grant the motion for leave to amend and evaluate the adequacy of Sumotexts' claims in the context of Defendants' motions to dismiss.

Accordingly, Sumotext's motion for leave to amend is GRANTED. In the future any motion for leave to amend must be submitted with a proposed pleading which clearly indicates what new claims or parties Sumotext seeks to add. Sumotext may not file any pleading containing new claims or parties without express advance authorization by the Court.

### III. DEFENDANTS' MOTIONS TO DISMISS

#### A. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*

4

*Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Mblox

Mblox moves to dismiss all claims against it, which include: Claim 4 for breach of the implied covenant of good faith and fair dealing, Claim 7 for conspiracy to monopolize in violation of the Sherman Act § 2, and Claim 9 for conspiracy to restrain trade in violation of the Sherman Act § 1. Before turning to Mblox's specific arguments regarding the adequacy of those claims, the Court addresses Mblox's contention that Sumotext improperly has included in the SAC allegations that were not authorized by the Court's dismissal order or that contradict allegations contained in Sumotext's earlier pleadings. The argument regarding unauthorized allegations lacks merit given the Court's determination, discussed above, that broad leave to amend is warranted under Rule 15 and *Foman*. The argument regarding contradictions between Sumotext's current and earlier pleadings likewise is unavailing. "[T]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007). Absent a showing of bad faith under the standards set forth in Federal Rule of Civil Procedure 11, inconsistent allegations provide no basis for disregarding a plaintiff's allegations. *Id.* Sumotext has asserted that any inconsistencies between the iterations of its pleadings are attributable to the

5

defendants' concealment of the relevant facts. Accordingly, the Court has considered all of the allegations of the SAC in determining whether Sumotext has stated a claim upon which relief may be granted.

### 1. Claim 4 for Breach of the Implied Covenant

The implied covenant of good faith and fair dealing "requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *Avidity Partners, LLC v. State*, 221 Cal. App. 4th 1180, 1204 (2013) (internal quotation marks and citation omitted). "Although breach of a specific provision of the contract is not a necessary prerequisite to a claim of breach of the implied covenant, it is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Id.* (internal quotation marks, citation, and brackets omitted). "The implied covenant of good faith and fair dealing does not impose substantive terms and conditions beyond those to which the parties actually agreed." *Id.*

Sumotext alleges that when Mblox was negotiating the sale of Zoove to VHT StarStar, Mblox knew that Zoove and VHT StarStar had no intention of honoring Sumotext's existing contracts. SAC ¶¶ 155-65. Mblox nonetheless went forward with the sale and assignment of Sumotext's contracts. *Id.* Sumotext claims that Mblox's sale of Zoove and assignment of Sumotext's contracts under those circumstances breached the implied covenant of good faith and fair dealing. *Id.* The claimed injury flowing from that alleged breach is the decision by VHT StarStar and Zoove to terminate Sumotext's StarStar leases. *Id.*

Mblox argues that Sumotext fails to state a claim for breach of the implied covenant because it fails to identify any particular contractual provision that has been frustrated. *See Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012) ("Importantly, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated.") (internal quotation marks and citation omitted). In particular, Mblox notes that the contracts between the parties do not contain any limitation on Mblox's power to sell Zoove and assign StarStar leases. Mblox argues that Sumotext's claim thus is based on frustration of a non-existent contract term.

Sumotext asserts that it has identified with particularity those contracts whereby Sumotext leased StarStar numbers from Mblox, *see* SAC ¶ 65, and that an implied covenant claim may be based on the theory that Mblox's conduct resulted in total frustration of those contracts. Sumotext relies primarily on district court decisions arising in the foreclosure context which are factually distinguishable from the present case. For example, in *Chaghouri*, the district court concluded that a borrower had stated a claim for breach of the implied covenant where the borrower alleged that the defendant bank induced her to default on her mortgage so that she could be considered for loan modification and then initiated foreclosure proceedings based on the default. *See Chaghouri v. Wells Fargo Bank, N.A.*, No. 14-CV-01500-YGR, 2015 WL 65291, at *3-4 (N.D. Cal. Jan. 5, 2015). In the present case, there is no allegation that Mblox induced Sumotext to default or take any other action which would permit Mblox to exploit Sumotext in the manner described in *Chaghouri* and other cases cited by Sumotext.

Sumotext also argues that "[t]he covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 372 (1992). *Carma Developers* involved the parties' rights under a commercial lease that contained a "recapture clause" which permitted the landlord to terminate the lease upon the lessee's notice of intent to sublet the premises. *Id.* at 374. The clause expressly permitted the landlord to "recapture" any increased rental value of the premises by leasing directly to the proposed sublessee or to another. *Id.* The lessee argued that the implied covenant prohibited the landlord from exercising its discretionary power under the recapture clause absent a reasonable objection to the proposed sublet. *Id.* at 373-74. The California Supreme Court rejected that argument, noting that the recapture clause expressly permitted the landlord's conduct and stating that "[w]e are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement." *Id.* at 374.

*Carma Developers* offers Sumotext no support. The case is factually distinguishable, as Sumotext does not allege that Mblox abused discretionary power conferred on it by the parties'

7

contracts. Moreover, the case went against the plaintiff. Presumably, Sumotext cites *Carma Developers* merely for the general proposition that unreasonable exercise of discretionary power may, in appropriate circumstances, give rise to a claim for breach of the implied covenant. However, Sumotext cites no case suggesting that *Carma Developers* may be extended to impose liability based on a company's sale of its subsidiary to a buyer who intends to terminate a particular customer's contracts after the sale. Absent such authority, the Court concludes that Sumotext's theory is untenable. Given this conclusion, leave to amend would be futile. *See Eminence Capital*, 316 F.3d at 1052 (a strong showing on any one of the *Foman* factors, which include futility of amendment, may warrant denial of leave to amend).

Mblox's motion to dismiss Claim IV is GRANTED WITHOUT LEAVE TO AMEND.

### 2. Claim 7 for Conspiracy to Monopolize – Sherman Act § 2 and Claim 9 for Conspiracy to Restrain Trade – Sherman Act § 1

Claim 7 asserts conspiracy to monopolize in violation of the Sherman Act § 2. The elements of that claim are: (1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury. *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

Claim 9 asserts conspiracy to restrain trade in violation of the Sherman Act § 1. To plead that claim, a plaintiff "must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

Mblox argues that Sumotext has not alleged facts showing that Mblox joined the alleged conspiracy to monopolize (Claim 7) or the alleged conspiracy to restrain trade (Claim 9). The Court agrees. Setting aside Sumotext's allegations of the ultimate facts – that Mblox "conspired" with the other defendants and formed the "intent" to monopolize and restrain trade – Sumotext alleges the following evidentiary facts with respect to Mblox. First, Mblox "looked the other way

8

rather than enforce the confidentiality agreement with the VHT StarStar parties." SAC ¶ 208. Second, Mblox sold Zoove for a premium price, and assigned Sumotext's contracts, with knowledge that Sumotext's contracts would be terminated after the sale. SAC ¶¶ 212, 233. And finally, Mblox retained certain of its existing customers when it sold Zoove. SAC ¶¶ 211, 234. While those factual allegations perhaps could give rise to an inference that Mblox entered into the alleged conspiracies, they just as easily give rise to an inference that Mblox made a legitimate business decision to sell Zoove and retain certain of its customers. "Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Kendall*, 518 F.3d at 1049. Moreover, with respect to the alleged § 2 conspiracy, it does not appear that Mblox's participation in the conspiracy can be inferred from Mblox's knowledge that the other defendants intended to terminate Sumotext's contracts following Mblox's sale of Zoove. *See Syufy Enterprises v. Am. Multicinema, Inc.*, 793 F.2d 990, 1000 (9th Cir. 1986) ("[A] supplier who licenses a product to another does not join the licensee in a conspiracy to monopolize merely because the licensee turns around and exploits the license for its own monopolistic purposes.").

At the hearing, the Court expressed reservations regarding the sufficiency of Sumotext's conspiracy allegations as to Mblox. Sumotext's counsel suggested that allegations regarding Mblox's retention of certain StarStar numbers provide critical support for its claims. Claims 7 and 9 each devote a single sentence to Mblox's retention of StarStar numbers. In Claim 7, Sumotext alleges that "Mblox carved out exclusive and preferential customers, territories, and pricing in the Market for itself, as well as illegally excluding competition by express agreement with the VHT StarStar Parties." SAC ¶ 211. In Claim 9, Sumotext alleges that "Mblox carved out exclusive and preferential customers, territories, and pricing in the Market for itself, as well as excluding competitors in the Market by express agreement with the VHT StarStar Parties." SAC ¶ 234. It may be that the type of carve-out referenced by Sumotext could give rise to a plausible inference that Mblox was part of the alleged conspiracies. However, the Court cannot draw such an inference from the bare bones allegations provided in Claims 7 and 9.

The Court has reviewed carefully the numerous factual allegations which precede and are

incorporated into Claims 7 and 9. However, as the Court noted in its prior order dismissing the FAC, "[i]n part, the problem with the FAC is that all of the factual detail appears in the recitation of events preceding the claims, but the claims themselves are quite succinct. That manner of pleading requires the Court to guess which facts Sumotext intends to support each claim." Order Granting Motion to Dismiss at 3, ECF 117. The Court simply cannot be expected to guess which of the 120 paragraphs preceding the SAC's claims are intended to support Claims 7 and 9 against Mblox.

Accordingly, Mblox's motion to dismiss Claims 7 and 9 is GRANTED WITH LEAVE TO AMEND.

### C. Zoove and VHT

Zoove and VHT jointly move for dismissal of all claims asserted against them with the exception of Claim 2 against Zoove for breach of contract, which is not challenged. The claims addressed in the motion include: Claim 1 for breach of contract, Claim 3 for breach of the implied covenant of good faith and fair dealing, Claim 5 for tortious interference with contract, Claim 6 for monopolization and joint monopolization in violation of the Sherman Act § 2, Claim 7 for conspiracy to monopolize in violation of the Sherman Act § 2, Claim 8 for anticompetitive merger under the Clayton Act § 18, and Claim 9 for conspiracy to restrain trade in violation of the Sherman Act § 1.

#### 1. Claim 1 for Breach of Contract (VHT)

Sumotext alleges that while VHT and StarSteve were investigating the possibility of acquiring Zoove, they entered into nondisclosure agreements ("NDAs") with Mblox under which they agreed to maintain the confidentiality of certain information disclosed to them by Mblox. SAC ¶ 122. Sumotext asserts that VHT and StarSteve breached those NDAs when they disclosed to Sumotext's customers the confidential terms of Sumotext's agreements with Mblox. *Id.* ¶ 124. Sumotext claims to be a third party beneficiary of the NDAs and in that capacity seeks damages caused by the alleged breach of the NDAs. *Id.* ¶ 125.

VHT contends that Sumotext is not entitled to enforce the NDAs because it is not an intended third party beneficiary. Under California law, only intended third party beneficiaries

10

may seek to enforce the contract; it is not enough that the contract incidentally benefits the party seeking enforcement. *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1022 (2009). While Sumotext has not attached the NDAs to its pleading, Zoove and VHT have done so, and the Court may consider the NDAs under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine permits a court to consider documents referenced in but not physically attached to the complaint). Sumotext's third party beneficiary claim is completely implausible in light of express language in the NDA between VHT and Mblox providing that "[a] person who is not a party to this NDA may not enforce any of its provisions." NDA ¶ 9, Exh. A to Hayden Decl., ECF 146-2.

Sumotext argues that this contractual exclusion of third party beneficiaries should be disregarded as against public policy. That argument is not supported by the cases Sumotext cites, which arose in the context of bid-rigging and securities fraud, are factually distinguishable from the present case, and cannot be read as broad disavowments of contractual clauses excluding third party beneficiaries. *See Morgan v. Gove*, 206 Cal. 627 (1929) (bid rigging); *Cariveau v. Halferty*, 83 Cal. App. 4th 126 (2000) (securities fraud). Consequently, the Court concludes that Sumotext may not pursue a third party beneficiary claim for breach of the NDAs and that any attempted amendment of this claim would be futile. *See Eminence Capital*, 316 F.3d at 1052.

VHT's motion to dismiss Claim 1 is GRANTED WITHOUT LEAVE TO AMEND.

### 2. Claim 3 for Breach of the Implied Covenant (Zoove)

As discussed above, the implied covenant of good faith and fair dealing "requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *Avidity Partners,* 221 Cal. App. 4th at 1204 (internal quotation marks and citation omitted). "Importantly, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated." *Plastino*, 873 F. Supp. 2d at 1191 (internal quotation marks and citation omitted). Sumotext's implied covenant claim against Zoove is somewhat confusing, as it makes general reference to numerous written agreements as well as what appear to have been oral representations by Zoove that Zoove would not exercise its contractual right to terminate Sumotext's StarStar

leases except "in the narrowest of circumstances." SAC ¶¶ 139-47. These allegations do not identify any specific contractual provision that was frustrated by Zoove's conduct.

Sumotext instead appears to be alleging that Zoove exercised its discretionary power to terminate Sumotext's contracts in an unreasonable manner which resulted in total frustration of those contracts. Where a contract grants one party a discretionary power affecting the rights of another, "[s]uch power must be exercised in good faith." *Carma Developers*, 2 Cal. 4th at 372. Therefore, Sumotext's allegations that Zoove exercised its discretionary termination rights in bad faith are sufficient to state a claim for breach of the implied covenant.

Zoove argues that Sumotext cannot premise its implied covenant claim on conduct which is permitted by the express language of the contracts. *See Carma Developers*, 2 Cal. 4th at 374 ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement."). However, the scope of Zoove's authority to terminate Sumotext's contracts is a disputed issue in this case. Sumotext claims that Zoove's authority was limited such that it could be exercised only in certain circumstances which did not exist at the time of termination. SAC ¶¶ 144-49. Sumotext's allegations that Zoove construed the governing contract provisions unreasonably and exceeded the scope of its authority when it terminated Sumotext's contracts are sufficient to state a claim for breach of the implied covenant. While Sumotext ultimately will be required to prove that Zoove's conduct was not expressly authorized by the contracts in question, Sumotext's ability to do so is a question for another day.

Zoove's motion to dismiss Claim 3 is DENIED.

### 3. Claim 5 for Tortious Interference with Contract (Zoove and VHT)

Under California law, the elements of the tort of intentional interference with a contract are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *United Nat. Maintenance, Inc. v. San Diego Convention Center, Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014).

Sumotext alleges that VHT, StarSteve, VHT StarStar, and Zoove, collectively referred to as "the VHT StarStar Parties," intentionally interfered with Sumotext's customers "for the purpose of getting those customers to abandon Sumotext contracts in favor of contracting directly with the VHT StarStar Parties." SAC ¶¶ 169-70. Sumotext provides several examples of allegedly false and misleading statements that "the VHT StarStar Parties and their agents" made to Sumotext's customers. SAC ¶¶ 174-78. While the Court generally is satisfied that the conduct alleged would support a claim for intentional interference, Sumotext improperly lumps multiple defendants together and fails to allege a factual basis for each defendant's liability. *See Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996) (jury instruction was erroneous where it "allowed the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct"); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, No. C-09-0511 RMW, 2010 WL 384736, at *2 (N.D. Cal. Jan. 29, 2010) (dismissing claim because plaintiff failed "to adequately plead facts sufficient to inform each defendant of the specific allegations against it under each asserted cause of action, and many of the allegations simply lump all of the defendants together in a group").

Sumotext asserts that it chose to allege misconduct by the "VHT StarStar Parties" rather than by each defendant individually because all of the defendant entities (except Mblox) are interrelated and Steve Doumar, the CEO of StarSteve, committed most of the acts of interference while acting as the agent for VHT, StarSteve, VHT StarStar, and Zoove. Sumotext's allegation that Doumar was "the primary agent" for all those parties do not give each defendant fair notice of the conduct that forms the basis of the tortious interference claim against it. *See* SAC ¶ 179. This is particularly true given Sumotext's allegation that other unidentified "agents and representatives of the VHT StarStar Parties directly participated in the unlawful conduct, or they otherwise authorized, acquiesced, or failed to take the necessary steps to prevent such unlawful conduct." *Id.*

The motion to dismiss Claim 5 is GRANTED WITH LEAVE TO AMEND.

**4. Antitrust Claims (Zoove and VHT)**

Sumotext asserts four antitrust claims against both Zoove and VHT (as well as other

1 defendants): Claim 6 for monopolization and joint monopolization in violation of the Sherman

2 Act § 2; Claim 7 for conspiracy to monopolize in violation of the Sherman Act § 2; Claim 8 for

3 anticompetitive merger under the Clayton Act § 18; and claim 9 for conspiracy to restrain trade in

4 violation of the Sherman Act § 1. Zoove and VHT argue that all of these claims fail because

5 Sumotext has not adequately alleged a relevant market; specific conduct by Zoove or VHT

6 showing participation in the alleged conspiracies; injury to competition; a group boycott; or an

7 illegal merger.

### a. Market

"In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a relevant market." *Solyndra Residual Trust v. Suntech Power Holdings Co.*, 62 F. Supp. 3d 1027, 1044 (N.D. Cal. 2014) (internal quotation marks and citation omitted). "A relevant market has two dimensions: the relevant geographic market and the relevant product market." *Id.* (internal quotation marks and citation omitted). Where the complaint's definition of relevant market is facially unsustainable, the antitrust claim may be dismissed. *Id.* (internal quotation marks and citation omitted).

Sumotext defines the relevant market as "the national market for mobile dial codes, which comprises three components: leasing, reselling, and servicing." SAC ¶ 115. Sumotext also alleges that "[t]he relevant geographic market is the United States because mobile dial codes are leased and registered on a national basis in the first instance." SAC ¶ 116. Defendants argue that Sumotext's market definition is facially unsustainable because Sumotext cannot define the relevant market to comprise a commodity controlled solely by Zoove. "[A]s a general matter, the Sherman Act does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (internal quotation marks and citation omitted).

Sumotext contends that the proper market definition is a factual question which should not be decided on a motion to dismiss. Sumotext is correct that the relevant market "is typically a factual element rather than a legal element," and that "alleged markets may survive scrutiny under

14

Rule 12(b)(6) subject to factual testing by summary judgment or trial." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). However, an antitrust claim will not survive a Rule 12(b) motion if "it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect." *Id.* Thus the Court must consider at this stage of the proceedings whether Sumotext's market definition is legally flawed as claimed by Defendants.

Sumotext argues that this case falls within a narrow exception to the general rule articulated in *Verizon* because the national registry for mobile dial codes controlled by Zoove is an "essential facility." The essential facilities doctrine "is a variation on a refusal to deal claim." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016). "It imposes liability where competitors are denied access to an input that is deemed essential, or critical, to competition." *Id.* While the United States Supreme Court has never recognized the doctrine, the Ninth Circuit has "continued to treat it as having a basis in § 2 of the Sherman Act." *Id.* at 1185. To establish a § 2 claim under the essential facilities doctrine, the plaintiff must show that: (1) the defendant is a monopolist in control of an essential facility, (2) the plaintiff, as the monopolist's competitor, is unable reasonably or practically to duplicate the facility, (3) the defendant refuses to provide the plaintiff with access to the facility, and (4) it is feasible for the defendant to provide such access. *Id.*

Defendants argue that Sumotext has not alleged facts sufficient to show that StarStar numbers are essential facilities. Sumotext alleges the following: "National registries provide essential facilities to a general public." SAC ¶ 13. "In 2010, Zoove launched the National Mobile Dial Code Registry ("the Registry") through exclusive contracts with the Common Carriers." *Id.* ¶ 15. "Zoove marketed itself as a 'national registry' and 'single authority for the leasing of cross-carrier Mobile Dial Codes.'" *Id.* ¶ 16. A market for leasing, reselling, and servicing StarStar numbers grew to at least eleven horizontal competitors. *Id.* ¶ 117. Access to the Registry "is indispensable to competition in the small but established market of leasing, reselling, and servicing mobile dial codes." *Id.* ¶ 193. The Court concludes that, for pleading purposes, these allegations provide a sufficient factual basis for Sumotext's assertion that the Registry is an essential facility.

Defendants urge the Court to conclude as a matter of law that the Registry is not an essential facility, citing *MetroNet* for the proposition that "[a] facility is essential only if it is otherwise unavailable and cannot be reasonably or practically replicated." *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1129-30 (9th Cir. 2004) (internal quotation marks and citation omitted). Defendants' counsel argued at the hearing that Sumotext has not alleged facts showing that StarStar numbers cannot be reasonably or practically replicated, speculating that StarStar numbers are interchangeable with all telephone numbers, with 800 numbers, and with web-based links. The Court cannot determine based on the record before it that StarStar numbers in fact are interchangeable with the products identified by counsel. Sumotext has alleged facts supporting its position that the Registry is an essential facility, and thus adequately has defined the relevant market for pleading purposes. Whether that definition ultimately will stand is not a question the Court needs to answer here.

### b. Specific Conduct Showing Participation in Conspiracies

Sumotext's antitrust claims suffer from the same flaw that persists throughout the SAC, a failure to distinguish between the defendants that Sumotext refers to as the "VHT StarStar Parties." For example, in Claim 6 Sumotext alleges that "the VHT StarStar Parties willfully maintained that monopoly power by anticompetitive and exclusionary conduct." SAC ¶ 191. In Claim 7, Sumotext describes "overt acts manifesting" an intent to monopolize and that were undertaken by the "VHT StarStar parties." SAC ¶ 207. In Claim 8, Sumotext describes the market power held by "the VHT StarStar Parties." SAC ¶ 223. And in Claim 9, Sumotext describes the conduct of the "VHT StarStar Parties" in major competitors' contracts, raising prices, and the like. SAC ¶ 235. Allegations which lump multiple defendants together are insufficient to put any one defendant on notice of the conduct upon which the claims against it are based. *See Chuman*, 76 F.3d at 295; *Eclectic Properties*, 2010 WL 384736, at *2. Accordingly, all of Sumotext's antitrust claims are subject to dismissal on this ground.

### c. Injury to Competition

Zoove and VHT argue that Sumotext has not alleged facts sufficient to show injury to competition. In order to maintain an antitrust claim, Sumotext must allege facts showing that

16

Defendants' conduct caused it to suffer injuries "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). "The antitrust laws . . . were enacted for the protection of competition not competitors." *Id.* at 488 (internal quotation marks and citation omitted). "Injury that flows from aspects of a defendant's conduct that are beneficial or neutral to competition is not 'antitrust injury.'" *Paladin*, 328 F.3d at 1158. "Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury." *Id.*

Sumotext alleges in the introduction to the SAC that Defendants have acted "to dominate the market among themselves, eliminate competing service providers and their competitive services, and raise prices and reduce services to a captured group of customers and prospects." SAC at 1. Sumotext makes similar allegations in its antitrust claims, asserting for example that "[t]he market has been harmed as a result of the VHT StarStar Parties' conduct as end-customers have been forced to pay supracompetitive prices while receiving lower quality and fewer services with more onerous and adhesive contract terms." SAC ¶ 201. Sumotext also alleges that "[t]he Market has suffered actual adverse effects . . . including price increases, lower quality products, and fewer market alternatives." *Id.* ¶ 224. Finally, Sumotext alleges that "Defendants' conduct and agreements harmed competition in the relevant market by vanquishing competition, raising prices, and imposing onerous new contract terms for end-customers." *Id.* ¶ 237. This Court has found similar allegations to be sufficient to plead antitrust injury. *See Funai Elec. Co. v. LSI Corp.*, No. 16-CV-01210-BLF, 2017 WL 1133513, at *7 (N.D. Cal. Mar. 27, 2017) (finding adequate allegations that "Defendants' wrongful conduct has brought about and continues to threaten to bring about a significant threat of injury for downstream price, quality, and innovation competition for devices that connect wirelessly to the Internet, or third party products that decompress digital video streams, thereby causing injury to consumers across the United States and elsewhere."). While Defendants certainly may challenge Sumotext's allegations of injury to competition as a factual matter in a future motion, the Court concludes that the allegations are adequate for pleading purposes.

####    d.   Group Boycott

Claim 9 asserts a group boycott under the Sherman Act § 1, which prohibits unreasonable contracts or combinations in restraint of trade. 15 U.S.C. § 1. A plaintiff may allege violations of Section 1 under one or more of the following "three rules of analysis: the rule of reason, per se, or quick look." *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030, 1037 (N.D. Cal. 2013). The per se approach has been applied to group boycotts when there has generally been "joint efforts by a firm or firms to disadvantage competitors." *Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 949 (9th Cir 1998) (internal quotation marks, citation, and emphasis omitted). Three characteristics are indicative of a per se group boycott: "(1) the boycott cuts off access to a supply, facility, or market necessary to enable the victim firm to compete; (2) the boycotting firm possesses a dominant market position; and (3) the practices are not justified by plausible arguments that they enhanced overall efficiency or competition." *Id.* (quoting *Hahn v. Oregon Physicians' Serv.*, 868 F.2d 1022, 1030 (9th Cir. 1988)). Finally, a quick look analysis may be used where "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1134 (9th Cir. 2011) (internal quotation marks and citation omitted).

Defendants argue that Claim 9 does not contain sufficient factual allegations of a joint effort or agreement to exclude Sumotext. The Court agrees. Sumotext alleges that Defendants had market power and cut off Sumotext's access to StarStar numbers as part of a scheme to remove Sumotext from the market. *See* SAC ¶¶ 231-238. However, those allegations are conclusory and for the most part do not distinguish between the different defendants. In light of Sumotext's allegations elsewhere in the SAC regarding Zoove's monopolization of an essential facility and dealings with the other defendants, it may well be that Sumotext can add factual specificity to its claim. However, as presently framed, Claim 9 is inadequate.

####    e.   Merger

Claim 8 asserts a merger challenge under the Clayton Act. "Section 7 of the Clayton Act prohibits mergers or acquisitions "in any line of commerce or in any activity affecting commerce

in any section of the country, [where] the effect of such acquisition may be substantially to lessen competition or to tend to create a monopoly." *Reyn's Pasta Bella, LLC v. Visa U.S.A.*, 259 F. Supp. 2d 992, 1003 (N.D. Cal. 2003) (quoting 15 U.S.C. § 18). "Under Section 7 of the Clayton Act, a plaintiff must allege that the acquisition will create an appreciable danger of anticompetitive consequences." *Id.* Defendants argue that Sumotext has not met this requirement.

Claim 8 contains very few facts and alleges in only the most general terms that VHT StarStar's acquisition of Zoove was "presumptively illegal." SAC ¶ 222. The claim contains no facts explaining why transfer of Zoove from one of Sumotext's competitors, Mblox, to another competitor, VHT StarStar, created an appreciable danger of anticompetitive consequences. Some of the facts alleged in the background section of the SAC likely would provide the specificity required to maintain the merger claim. However, the Court cannot guess which facts those are. Consequently, Claim 8 fails to state a claim.

For the reasons discussed above, the motion to dismiss brought by Zoove and VHT is GRANTED WITH LEAVE TO AMEND as to Claims 6, 7, 8, and 9.

### D. StarSteve

StarSteve moves to dismiss all claims asserted against it, which include: Claim 1 for breach of contract, Claim 5 for tortious interference with contract, Claim 6 for monopolization and joint monopolization in violation of the Sherman Act § 2, Claim 7 for conspiracy to monopolize in violation of the Sherman Act § 2, Claim 8 for anticompetitive merger under the Clayton Act § 18, and Claim 9 for conspiracy to restrain trade in violation of the Sherman Act § 1.

#### 1. Claim 1 for Breach of Contract

As discussed above, Sumotext asserts that VHT and StarSteve entered into NDAs with Mblox and breached those NDAs when they disclosed confidential information to Sumotext's customers. SAC ¶¶ 122-24. Sumotext claims to be a third party beneficiary of the NDAs. *Id.* ¶ 125. However, that claim is implausible given express language in the NDA between StarSteve and Mblox providing that "[a] person who is not a party to this NDA may not enforce any of its provisions." NDA ¶ 9, Exh. B to Hayden Decl., ECF 146-3. Moreover, given that contractual language, amendment of this claim would be futile. *See Eminence Capital*, 316 F.3d at 1052

19

StarSteve's motion to dismiss Claim 1 is GRANTED WITHOUT LEAVE TO AMEND.

### 2. Claim 5 for Tortious Interference with Contract

As noted in the Court's discussion of the motion to dismiss brought by Zoove and VHT, Sumotext's claim for tortious interference with contract improperly lumps multiple defendants together and fails to allege a factual basis for each defendant's liability. *See Chuman*, 76 F.3d at 295; *Eclectic Properties*, 2010 WL 384736, at *2. Sumotext must with specificity what conduct of each defendant renders that defendant liable for tortious interference.

StarSteve's motion to dismiss Claim 5 is GRANTED WITH LEAVE TO AMEND.

### 3. Antitrust Claims

StarSteve's motion to dismiss Sumotext's antitrust claims mirrors, and in fact expressly adopts, the arguments asserted by Zoove and VHT. *See* StarSteve's Motion at 2, ECF 148. Accordingly, for the reasons discussed above with respect to Zoove and VHT, StarSteve's motion to dismiss Claims 6, 7, 8, and 9 is GRANTED WITH LEAVE TO AMEND.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Sumotext's motion for leave to amend is GRANTED.

(2) Mblox's motion to dismiss is

    (a) GRANTED WITHOUT LEAVE TO AMEND as to Claim 4, and

    (b) GRANTED WITH LEAVE TO AMEND as to Claims 7 and 9.

(3) The motion to dismiss brought by Zoove and VHT is

    (a) GRANTED WITHOUT LEAVE TO AMEND as to Claim 1,

    (b) DENIED as to Claim 3, and

    (c) GRANTED WITH LEAVE TO AMEND as to Claims 5, 6, 7, 8, and 9.

(4) StarSteve's motion to dismiss is

    (a) GRANTED WITHOUT LEAVE TO AMEND as to Claim 1, and

    (b) GRANTED WITH LEAVE TO AMEND as to Claims 5, 6, 7, 8, and 9.

Dated: June 26, 2017

BETH LABSON FREEMAN
United States District Judge