UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUMOTEXT CORP., <br> Plaintiff, <br> v. <br> ZOOVE, INC., et al., <br> Defendants. | Case No. 16-cv-01370-BLF <br><br> **ORDER DENYING MOTION TO DISMISS BROUGHT BY ZOOVE, VHT, VHT STARSTAR, AND STARSTEVE; GRANTING MOTION TO DISMISS BROUGHT BY MBLOX WITHOUT LEAVE TO AMEND; DENYING MBLOX'S MOTION FOR SANCTIONS; AND SETTING CASE MANAGEMENT CONFERENCE** <br><br> [Re: ECF 220, 221, 222, and 224] |

Plaintiff Sumotext Corporation ("Sumotext") brought this action to enforce its alleged rights to lease StarStar numbers – vanity mobile dial codes such as "**LAW" and "**MOVE" – from Defendant Zoove, Inc. ("Zoove").[1] Zoove administers the national mobile dial code registry ("the registry"), and it has exclusive rights to operate StarStar numbers for all major carriers, including AT&T, Verizon Wireless, T-Mobile, and Sprint. Sumotext built a business around leasing StarStar numbers from Zoove and subleasing them to customers while providing related software and services. That business was successful until Zoove was acquired by Defendant VHT StarStar, after which Zoove terminated all Sumotext's existing StarStar leases and offered new leases at rates 1,000 times what Sumotext had been paying. Zoove's acquisition and subsequent dealings with Sumotext allegedly were in furtherance of an unlawful conspiracy to monopolize the StarStar market. Sumotext asserts claims against Zoove, VHT StarStar, and others for violations of federal antitrust law and state common law.

---

[1] It appears that Zoove now does business as "StarStar Mobile." For the sake of simplicity, the Court will refer to the Zoove/StarStar Mobile entity as "Zoove."

This order addresses two motions to dismiss Sumotext's third amended complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) and a motion for sanctions against Sumotext pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. For the reasons discussed below, the motion to dismiss brought by Defendants Zoove, VHT StarStar, Virtual Hold Technology LLC ("VHT"), and StarSteve, LLC ("StarSteve") is DENIED[2]; the motion to dismiss brought by Defendant Mblox, Inc. ("Mblox") is GRANTED WITHOUT LEAVE TO AMEND; and the motion for sanctions brought by Mblox is DENIED. A Case Management Conference is set for May 24, 2018.

## I. BACKGROUND[3]

Sumotext began leasing StarStar numbers from Zoove in 2012. TAC ¶¶ 22-24. Sumotext struggled initially, but eventually it built up a successful business based on subleasing StarStar numbers to customers while also providing related software and services. *Id.* ¶¶ 27-28. In 2014, Mblox acquired Zoove as a wholly owned subsidiary. *Id.* ¶¶ 7, 29. During Mblox's ownership, Sumotext continued with its successful business model. *Id.* ¶¶ 29-35. By that time, many competitors had followed Sumotext into the StarStar product/service market, which Sumotext describes as containing three segments: the leasing segment, the reselling (subleasing) segment, and the servicing segment. *Id.* ¶¶ 28, 106, 116-18.

One such competitor, StarSteve, decided to combine with Zoove in order to monopolize the StarStar market. *Id.* ¶¶ 65-67. In pursuit of that goal, StarSteve entered into a letter of intent ("LOI") with Mblox in September 2015, outlining a deal in which StarSteve would acquire Mblox, StarSteve and Mblox would divide StarStar customers and territories, and other competitors would be barred from the market. *Id.* ¶¶ 68-69. However, StarSteve determined that it lacked the capital and expertise to go forward with the acquisition of Zoove on its own. *Id.* ¶ 70.

---

[2] Zoove, VHT StarStar, and VHT filed a motion to dismiss (ECF 222) which was joined by StarSteve (ECF 224).

[3] The background section is drawn from Sumotext's factual allegations, which are accepted as true for purposes of evaluating the Rule 12(b)(6) motions to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

StarSteve ultimately entered into a joint venture with VHT to create a new limited liability company, VHT StarStar, for the purpose of acquiring Zoove, monopolizing the StarStar market, and eliminating Sumotext as a competitor. TAC ¶¶ 71-73. As part of the pre-acquisition due diligence for VHT StarStar's purchase of Zoove, Mblox disclosed all of its customer agreements, including its contracts with Sumotext. *Id.* ¶ 75. VHT, StarSteve, and VHT StarStar used that confidential information to target Sumotext's customers, approaching them and representing that Sumotext did not have the right to renew its StarStar leases and that those leases would be terminated upon VHT StarStar's purchase of Zoove. *Id.* ¶ 76. According to Sumotext, those representations were false and were made to persuade Sumotext's customers to abandon it and lease StarStar numbers directly from Zoove and VHT StarStar. *Id.* ¶¶ 76-77.

Sumotext became aware of the above-described conduct and informed Mblox that it objected to the sale of Zoove. TAC ¶¶ 79-81. Sumotext "warned Mblox from completing the transaction – thus furthering, joining, and profiting from the conspiracy – in the face of known unlawful schemes." *Id.* ¶ 81. Mblox nonetheless went forward with the sale of Zoove to VHT StarStar in December 2015. *Id.* ¶ 97.

After the sale, Zoove – controlled by StarSteve, VHT, and VHT StarStar – terminated all of Sumotext's StarStar leases in breach of written contracts. TAC ¶¶ 100-01. Sumotext was informed that it could lease StarStar numbers only if it agreed to onerous new leasing terms which included an increase in rates from an average of $500 per month per StarStar number to an average of $500,000 per month per number. *Id.* ¶ 102. Others in the market were targeted as well. *Id.* ¶ 104. For example, Dawson Law Firm's lease fee for \*\*CRASH was raised from $1,000 per month for a nationwide lease to $5,000 per month for just the South Florida Region. *Id.* Another lessee, A-Z Lock and Key, was not permitted to renew its lease of \*\*LOCKS. *Id.*

Sumotext, then under the belief that VHT had acquired Zoove, filed this action against VHT and Zoove in March 2016 for breach of contract and related state law claims. Compl., ECF 1. Sumotext later added StarSteve, VHT StarStar, and Mblox as defendants and expanded its pleading to assert federal antitrust claims as well as state law claims. The operative TAC contains claims for: (1) breach of contract against Zoove; (2) breach of the implied covenant of good faith

1  and fair dealing against Zoove; (3) tortious interference with contract against VHT, StarSteve, and VHT StarStar; (4) restraint of trade in violation of Section 1 of the Sherman Act against VHT, StarSteve, VHT StarStar, Zoove, and Mblox; and (5) conspiracy to monopolize and monopolization in violation of Section 2 of the Sherman Act against VHT, StarSteve, VHT StarStar, Zoove, and Mblox. TAC, ECF 185-4.

Two separate Rule 12(b)(6) motions are pending before the Court, one brought by Zoove, VHT, VHT StarStar, and StarSteve, and the other by Mblox. Both motions are limited to Sumotext's federal antitrust claims (Claims 4 and 5). Sumotext's state law claims (Claims 1, 2, and 3) are not at issue. Mblox also has filed a motion for sanctions against Sumotext.

## II. MOTIONS TO DISMISS

### A. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Zoove, VHT, VHT StarStar, and StarSteve

Zoove, VHT, VHT StarStar, and StarSteve (collectively, "Moving Parties") contend that Sumotext has failed to state a claim against them for violation of the Sherman Act under either Section 1 (Claim 4) or Section 2 (Claim 5).

#### 1. Sherman Act Section 1 (Claim 4)

Claim 4 alleges restraint of trade in violation of Section 1 of the Sherman Act. That section provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. To plead a Section 1 claim, a plaintiff "must plead not just ultimate facts

4

(such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

Moving Parties argue that Sumotext fails to meet this pleading standard in two respects. First, they assert that Sumotext does not plausibly allege injury arising from a combination or conspiracy between two or more entities, because the facts upon which the Section 1 claim is based are equally consistent with unilateral business decisions by Zoove. To the extent that other entities were involved in Zoove's decisions, Moving Parties assert that the common ownership of those entities dictates that they be viewed as a single enterprise which cannot collude with itself. Second, Moving Parties contend that the TAC does not contain sufficient factual particularity as to who at each of the defendant companies did what, and when, to join and further the conspiracy. *See Kendall*, 518 F.3d at 1048 (finding Section 1 claim deficient where it did not "answer the basic questions: who, did what, to whom (or with whom), where, and when?"). The Court addresses those arguments in turn.

### a. Unilateral Business Decisions

Section 1 "does not reach conduct that is wholly unilateral." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (internal quotation marks and citation omitted). "Unilateral conduct by a single firm, even if it appears to restrain trade unreasonably, is not unlawful under section 1 of the Sherman Act." *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1152 (9th Cir. 1988) (internal quotation marks and citation omitted). Moving parties contend that all of the conduct of which Sumotext complains, e.g., Zoove's termination of Sumotext's StarStar leases and increased pricing for new leases, are just as consistent with unilateral business decisions by Zoove as they are with an unlawful conspiracy. Under those circumstances, Moving Parties argue, Sumotext does not plausibly allege a Section 1 violation. *See Twombly*, 550 U.S. at 557 (discussing "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement"); *Kendall*, 518 F.3d 1049 ("Allegations of facts that could just as

5

easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws.").

Moving Parties' argument might be persuasive were Sumotext relying solely on allegations that Zoove terminated its StarStar leases and increased its pricing. However, the TAC contains other allegations that plausibly suggest an agreement by VHT and StarSteve – two separate entities – to acquire Zoove for the purpose of monopolizing the StarStar market and eliminating Sumotext as a competitor. Prior to Mblox's sale of Zoove, Sumotext was the strongest competitor in the StarStar market by volume of StarStar leases and revenue. TAC ¶ 103. As soon as StarSteve and VHT agreed to form VHT StarSteve for the purpose of acquiring Zoove, they went after Sumotext's customers aggressively. *Id.* ¶¶ 71-78. Steve Doumar of StarSteve, Wes Hayden of VHT, and Greg Garvey of VHT told Sumotext's customers that Sumotext did not have the right to renew its StarStar leases and that those leases would be terminated once VHT StarStar acquired Zoove. *Id.* ¶¶ 76-79. Those communications interfered with Sumotext's relationships with its customers, making it difficult for Sumotext to collect on outstanding invoices and thus affecting Sumotext's cash flow. *Id.* ¶¶ 77-78. Once VHT StarStar acquired Zoove, Hayden and Garvey replaced Zoove's directors and senior officers with themselves. *Id.* ¶ 271. Doumar, Hayden, and Garvey, acting on behalf of VHT, StarSteve, and VHT StarStar, caused Zoove to terminate Sumotext's StarStar leases and offer new leases "so onerous that it would have prevented Sumotext from reselling its StarStar numbers." *Id.* ¶¶ 99-102. For example, the rate for Sumotext to lease a StarStar number was increased from $500 per month per number to $500,000 per month per number. *Id.* ¶ 102.

The Court concludes that these allegations constitute "enough factual matter (taken as true) to suggest that an agreement was made." *See Twombly*, 550 U.S. at 556. "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* Such a reasonable expectation is raised here. Of course, Sumotext will have to prove the illegal agreement in order to prevail on its Section 1 claim, and proof may be difficult to muster. However, Sumotext's ability to prove its claims is a question for another day.

*See Twombly*, 550 U.S. at 556 (a complaint that alleges facts sufficient to suggest an anticompetitive agreement "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (internal quotation marks and citation omitted).

Relying on *Copperweld*, Moving Parties argue that to the extent other entities were involved in Zoove's business decisions, the Zoove-related entities constitute a single enterprise which cannot collude with itself. In *Copperweld*, the Supreme Court held that "the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act." *Copperweld*, 467 U.S. at 771. In a later decision, *American Needle*, the Supreme Court clarified that the appropriate inquiry "is one of competitive reality," and that "it is not determinative that two parties to an alleged § 1 violation are legally distinct entities." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 196 (2010). "The key is whether the alleged contract, combination . . . , or conspiracy is concerted action – that is, whether it joins together separate decisionmakers." *Id.* at 195.

Based on the allegations of the TAC, *Copperweld* does not appear to be applicable. Sumotext alleges that StarSteve and VHT initially formed the conspiracy to monopolize at a time when the two companies were entirely separate entities which were horizontal competitors of Sumotext. Compl. at 2:17-23, ¶¶ 71-73. Moving Parties argue that those allegations are factually incorrect, and that "VHT ultimately bought Zoove outright through a wholly owned subsidiary, rather than in a joint venture with StarSteve." Motion to Dismiss at 8, ECF 222. Moving Parties also dispute Sumotext's characterization of VHT as a horizontal competitor. *Id.* at 14. While Moving Parties ultimately may disprove Sumotext's allegations, at this stage in the proceedings the Court's role is not to resolve factual disputes but to determine whether the TAC states a viable Section 1 claim. It does for the reasons discussed herein.

It is unclear which, if any, of the defendant entities may be viewed as a single enterprise after Zoove was acquired. While it is alleged that VHT StarStar wholly owned Zoove after the acquisition, StarSteve and VHT remained distinct entities with StarSteve owning a minority of the shares in VHT StarStar and VHT owning a majority. TAC ¶¶ 7, 71-72. Some district courts

7

within the Ninth Circuit have held that minority ownership in a corporation is insufficient to trigger *Copperweld*. See, e.g., *Aspen Title & Escrow, Inc. v. Jeld-Wen, Inc.*, 677 F. Supp. 1477, 1486 (D. Or. 1987) ([O]nly corporations which are owned 100% in common, or a de minimis amount less than 100%, are covered by the *Copperweld* rule.").

Moving Parties rely on *Freeman*, in which the Ninth Circuit held that the single-entity rule may apply to "partnerships or other joint arrangements in which persons who would otherwise be competitors pool their capital and share the risks of loss as well as the opportunities for profit." *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147-48 (9th Cir. 2003) (internal quotation marks and citation omitted). However, "the fact that joint venturers pursue the common interests of the whole is generally not enough, by itself, to render them a single entity." *Id.* at 1148. "[T]he single-entity inquiry is fact-specific." *Id.* In *Freeman*, the case had reached the summary judgment stage and thus that fact-specific inquiry was resolved on a fully developed record. It may be that once the record in this case is fully developed, Moving Parties will be able to demonstrate that the single-entity rule does apply. Because application of the rule is not apparent from the TAC, however, the rule does not constitute a basis for dismissal of Sumotext's Section 1 claim at the pleading stage.

Moving Parties' arguments based on Zoove's asserted unilateral business decisions and on the single-entity rule thus do not warrant dismissal of Sumotext's Section 1 claim.

### b. Factual Particularity

Nor is the Court persuaded by Moving Parties' assertion that the TAC lacks sufficient factual particularity as to the role of each defendant. The Court dismissed Sumotext's prior iteration of its pleading in part because of a failure to distinguish between defendants that Sumotext referred to as the "VHT StarStar Parties." Order of June 26, 2017 ("June 2017 Order") at 16, ECF 175. The Court noted that allegations which lump multiple defendants together are insufficient to put any one defendant on notice of the conduct upon which the claims against it are based. *See Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996). Moving Parties contend that the TAC does not cure this defect, and that it fails to allege each defendant's role in the conspiracy. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008)

8

(complaint "must allege that each individual defendant joined the conspiracy and played some role in it"). However, the TAC distinguishes between the defendants, identifies the individuals who acted on behalf of the entity defendants, and explains each defendant's role in the alleged conspiracy. For example, Sumotext identifies the founders of the conspiracy as Doumar, Hayden, and Garvey; explains which entities those individuals represented and in what capacity, and describes the conduct each individual undertook on behalf of his corporate entity. TAC ¶¶ 65-68, 70-78, 133-41. Claims 4 and 5 break down the antitrust claims element by element, identifying by name each individual and entity whose conduct forms the basis of the claims. While Moving Parties do cite some instances where Sumotext used terms such as "monopolists" and "members of the joint venture," the Court has no difficulty concluding that the TAC as a whole identifies each defendant's role with adequate particularity.

Accordingly, Moving Parties' motion to dismiss Sumotext's Section 1 Claim (Claim 4) is DENIED.[4]

### 2. Sherman Act Section 2 (Claim 5)

Claim 5 alleges conspiracy to monopolize and monopolization in violation of Section 2 of the Sherman Act. That section provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other persons, to monopolize any part of the trade or commerce . . . shall be deemed guilty of a felony." 15 U.S.C. § 2. To state a civil claim for conspiracy to monopolize, the plaintiff must allege facts showing: (1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury. *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003). To state a civil claim for monopolization under this provision, the plaintiff must allege facts showing: (1) the possession of monopoly power in

---

[4] In setting forth its reasoning for this ruling, the Court has touched on only those portions of the TAC necessary to dispose of the grounds for dismissal argued in the motion: that Sumotext's allegations are equally consistent with unilateral business decisions by Zoove and that Sumotext has failed to allege each defendant's role in the conspiracy with adequate particularity. The Court need not, and does not, address every issue raised in the parties' briefing, for example, whether Sumotext's group boycott theory properly is evaluated as per se unlawful or under the rule of reason.

the relevant market; (2) the willful acquisition or maintenance of that power; and (3) causal antitrust injury. *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013).

Sumotext alleges a "successful conspiracy to monopolize." TAC ¶ 302. Moving Parties contend that Sumotext has not made out a claim of monopolization for several reasons. First, they argue that Sumotext does not adequately plead a relevant market, because Sumotext defines the relevant market as the market for Zoove's StarStar leases. Second, even assuming that the relevant market is the StarStar market as alleged by Sumotext, Moving Parties assert that Sumotext does not allege facts showing that Defendants' conduct resulted in monopolization of the market. Moving Parties also dispute Sumotext's position that the StarStar numbers are an essential facility, and they argue that absent application of the essential facilities doctrine, Sumotext's monopolization claim against Zoove is inadequate. And finally, Moving Parties argue that if Defendants are treated as a single entity, Defendants cannot be liable simply because it holds a natural monopoly on its own product (StarStar numbers).

For the most part, Moving Parties' arguments are merely a rehash of arguments previously rejected by the Court in its order addressing motions to dismiss the second amended complaint. *See* June 2017 Order, ECF 175. No party sought reconsideration of that ruling, and the Court sees no need to revisit it in detail here. Moving Parties' arguments regarding the Section 2 claim therefore are addressed briefly as follows.

### a. Relevant Market

"In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a relevant market." *Solyndra Residual Trust v. Suntech Power Holdings Co.*, 62 F. Supp. 3d 1027, 1044 (N.D. Cal. 2014) (internal quotation marks and citation omitted). "A relevant market has two dimensions: the relevant geographic market and the relevant product market." Id. (internal quotation marks and citation omitted). Where the complaint's definition of relevant market is facially unsustainable, the antitrust claim may be dismissed. *Id.* (internal quotation marks and citation omitted).

Sumotext alleges that "[t]he relevant product/service market is the national market for mobile dial codes, which is comprised of three segments: leasing, reselling, and servicing
10

(collectively, the "Market"). TAC ¶ 106. Sumotext also alleges that "[t]he relevant geographic market for mobile dial codes is the United States because mobile dial codes are: a. Registered and leased from the Registry on a nationwide basis; b. Supported by all major wireless carriers in the U.S.; and c. Called from and interconnected to phone lines throughout all the fifty states." *Id.* ¶ 107.

The Court previously found this market definition to be adequate for pleading purposes, rejecting the argument that Sumotext cannot define the relevant market to comprise a commodity controlled solely by Zoove. June 2017 Order at 16, ECF 175. While recognizing that the Sherman Act generally does not restrict a private business from exercising its own independent discretion as to parties with whom it will deal, *see Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko*, LLP, 540 U.S. 398, 408 (2004), the Court found that Sumotext had alleged facts sufficient to bring this case within a narrow exception to the general rule on the basis that the registry is an "essential facility." June 2017 Order at 16. The Court acknowledged the defense argument that Sumotext had not alleged facts showing that StarStar numbers cannot be reasonably or practically replicated, and considered Defendants' speculation that StarStar numbers are interchangeable with all telephone numbers, with 800 numbers, and with web-based links. *See MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1129-30 (9th Cir. 2004) ("A facility is essential only if it is otherwise unavailable and cannot be reasonably or practically replicated.") (internal quotation marks and citation omitted). However, the Court concluded that Sumotext had alleged facts sufficient to support its position that the registry is an essential facility. June 2017 Order at 16. The Court noted that whether Sumotext's definition ultimately will stand was not a question to be answered on a motion to dismiss. *Id.*

Moving Parties simply ignore the Court's prior ruling, repeating arguments that the Court already has rejected, for example, that Zoove has a unilateral right to choose with whom it deals; and that Sumotext has not alleged facts showing that StarStar numbers are not reasonably interchangeable with 10-digit phone numbers, 5-digit common short codes, and internet domain names. Repetition of arguments previously considered and rejected by the Court does not constitute a basis for dismissal under Rule 12(b)(6).

11

#### b. Monopolization

Moving Parties argue that Sumotext has not alleged facts showing specific intent to control prices or destroy competition in the relevant market as required for a monopolization claim. They argue that Zoove's conduct was motivated by legitimate business reasons, and that Zoove's unilateral decision to change its business model cannot give rise to a Section 2 claim regardless of who owns it.

As an initial matter, specific intent is required only for the claim of conspiracy to monopolize, not for a claim of monopolization itself. *See Somers*, 729 F.3d at 963 (listing elements of claim for monopolization); *Paladin*, 328 F.3d at 1158 (listing elements of conspiracy to monopolize). Moreover, the Court cannot make a factual finding that Zoove's conduct was motivated by unilateral, legitimate business justifications as Moving Parties seem to want. Moving Parties urge the Court to disregard as irrelevant Sumotext's allegations regarding the change in ownership of Zoove, because Zoove always had and still has sole authority with respect to StarStar leases and could have engaged in exactly the same conduct even if it had been retained by Mblox. The fact that Zoove *could* have made a unilateral business decision to terminate Sumotext's StarStar leases even if Doumar, Hayden, Garvey, and their respective companies had never entered the picture is not relevant. As discussed in Section II.B.1.a above, it is alleged that StarSteve and VHT entered into a joint venture to acquire control of Zoove and eliminate Sumotext as a competitor, and that they succeeded in both goals. Those allegations, and the supporting facts discussed above, are sufficient to make out a Section 2 claim.

#### c. Essential Facilities Doctrine

Moving Parties dispute the application of the essential facilities doctrine. That argument is addressed in part above in connection with Sumotext's market definition.

The Court addresses one additional argument made by Moving Parties: that even if the registry is an essential facility, Sumotext has not alleged that Zoove refused to deal with Sumotext. Moving Parties argue that it appears on the face of the complaint that Zoove did offer to deal with Sumotext, pointing to allegations that Zoove offered StarStar leases to Sumotext at approximately a 10,000% mark-up. "An offer to deal with a competitor only on unreasonable terms and

12

conditions can amount to a practical refusal to deal." *MetroNet*, 383 F.3d at 1132. Another court in this district has held that a 400% price increase was tantamount to a refusal to deal. *See Safeway Inc. v. Abbott Labs.*, No. C 07-05470 CW, 2010 WL 147988, at *7 (N.D. Cal. Jan. 12, 2010). This Court concludes that Sumotext's allegation of the mark-up in the lease rate from $500 per month per StarStar number to $500,000 per month per StarStar number, along with allegations regarding other new lease conditions, are sufficient to allege a practical refusal to deal. *See* TAC ¶¶ 102, 167.

### d. Single Entity Monopolization

Finally, Moving Parties argue that if all Defendants are viewed as a single entity, there can be no viable Section 2 claim. However, a firm's unilateral refusal to deal with its rivals can give rise to antitrust liability. *See Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009); *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 608-611, (1985).

Accordingly, Moving Parties' motion to dismiss Sumotext's Section 2 Claim (Claim 5) is DENIED.

### C. Mblox

Mblox moves to dismiss Claims 4 and 5 under the Sherman Act – the only claims asserted against it – on three grounds. Mblox argues that the TAC does not contain facts showing that Mblox: (1) joined in the alleged conspiracies, (2) had specific intent to seize monopoly power, or (3) caused Sumotext antitrust injury. Because the first ground is dispositive, the Court need not reach the other two.

The Court granted Mblox's motion to dismiss the second amended complaint on the basis that Sumotext had not alleged facts showing that Mblox had joined the alleged conspiracies to restrain trade under Section 1 of the Sherman Act or monopolize under Section 2 of the Sherman Act. June 2017 Order 8-10, ECF 175. The Court summarized the evidentiary facts that had been alleged, namely, that Mblox: failed to enforce a confidentiality agreement with the VHT StarStar parties; sold Zoove for a premium price, and assigned Sumotext's contracts, with knowledge that Sumotext's contracts would be terminated after the sale; and retained certain of its existing customers when it sold Zoove. *Id.* The Court found that although those factual allegations

13

perhaps could give rise to an inference that Mblox entered into the alleged conspiracies, they just as easily give rise to an inference that Mblox made a legitimate business decision to sell Zoove and retain certain of its customers. *Id.* at 9. The Court relied on *Syufy Enterprises* in concluding that Mblox's participation in the conspiracy could not be inferred from Mblox's knowledge that the other defendants intended to terminate Sumotext's contracts following Mblox's sale of Zoove. *See Syufy Enterprises v. Am. Multicinema, Inc.*, 793 F.2d 990, 1000 (9th Cir. 1986) ("[A] supplier who licenses a product to another does not join the licensee in a conspiracy to monopolize merely because the licensee turns around and exploits the license for its own monopolistic purposes.").

With respect to Sumotext's arguments that Mblox's retention of certain StarStar numbers supported its Section 2 claim, the Court agreed that the type of carve-out referenced by Sumotext might give rise to a plausible inference that Mblox joined the alleged conspiracies, but it indicated that it could not draw such an inference from the bare-bones allegations provided in the second amended complaint. The Court granted Sumotext leave to amend its Sherman Act claims against Mblox on that basis.

In the TAC, Sumotext repeats the allegations previously found to be deficient by the Court regarding Mblox's failure to enforce the confidentiality agreement and sale of Zoove with knowledge that Sumotext's contracts would be terminated after the sale. TAC ¶¶ 142-66. Sumotext does expand on its allegations regarding Mblox's alleged carve-out, alleging that Tom Cotney of Mblox "inserted language in the agreements" to (1) "carve out exclusive rights to lease StarStar numbers to a list of over 30 marquee prospective StarStar customers"; and (2) "block Mblox's rivals from leasing, reselling or servicing mobile dial codes." TAC ¶ 166; 287. Those allegations do not specify which "agreements" contained the language in question. In fact, the quoted language is drawn from the September 2015 LOI between Mblox and StarSteve, which never came to fruition, and a November 2015 draft of the Stock Purchase Agreement ("SPA") between Mblox and VHT StarStar, which was not the final version executed. TAC Exhs. 9, 12. As discussed above, StarSteve did not go forward with the purchase of Zoove pursuant to the LOI. Moreover, the portion of the LOI referenced in the TAC is designated as non-binding. The Final SPA between Mblox and VHT does not contain any of the language quoted in the TAC regarding

14

the alleged carve-out and horizontal restrictions. Final SPA, ECF 208-3. Although the Final SPA is not attached to Sumotext's pleading, it is referenced in the TAC and the Court considers it under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Sumotext argues that the Court should not assume that the carve-out and horizontal restrictions negotiated by Mblox in earlier, non-final documents were abandoned just because those provisions were not included in the Final SPA between Mblox and VHT StarStar. Sumotext speculates that the parties may have secretly entered into carve-out and horizontal restriction provisions despite the fact that it appears from the Final SPA that Mblox actually exited the StarStar market. The Court finds Sumotext's theory to be implausible. Certainly it is not more plausible than the other possibility, which is that the Final SPA actually contains the whole of the parties' agreement and Mblox actually left the StarStar market. Consequently, Sumotext has failed to allege facts showing that Mblox joined the alleged conspiracies. *See Twombly*, 550 U.S. at 557 (discussing "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement"); *Kendall*, 518 F.3d 1049 ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws.").

For these reasons, Sumotext's claims against Mblox are subject to dismissal. In reaching this conclusion, the Court has paid particular attention to Sumotext's contention that Mblox may be liable for selling Zoove with knowledge that the buyers intended to breach Sumotext's contracts. Sumotext has not cited, and the Court has not discovered, a single case imposing antitrust liability in similar circumstances. Absent such authority, the Court is not persuaded that a seller's knowledge that the *buyer* may engage in illegal conduct renders the seller culpable.

A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors). While the Court finds no

undue delay (factor 1) or bad faith (factor 2), the other factors favor dismissal without leave to amend. Despite multiple opportunities to amend its pleading, Sumotext has failed to allege a viable claim against Mblox (factor 3). Sumotext's repeated attempts to cure the defects in its claims against Mblox have prejudiced Mblox's ability to obtain resolution (factor 4). And finally, the Court is satisfied that Sumotext has made its best efforts to state a viable claim against Mblox and it has come up short; any further opportunity to amend likely would be futile (factor 5).

Accordingly, Mblox's motion to dismiss Claims 4 and 5 (the only claims against it) is GRANTED WITHOUT LEAVE TO AMEND.

## III. MOTION FOR SANCTIONS

Mblox moves for sanctions against Sumotext for continuing to assert claims against Mblox in the TAC. Mblox's motion is brought under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.

### A. Legal Standards

Rule 11 of the Federal Rules of Civil Procedure imposes upon attorneys a duty to certify that they have read any pleadings or motions they file with the court and that such pleadings and motions are well-grounded in fact, have a colorable basis in law, and are not filed for an improper purpose. Fed. R. Civ. P. 11(b). If a court finds a violation of this duty, it may impose appropriate sanctions to deter similar conduct. Fed. R. Civ. P. 11(c)(1); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("[T]he central purpose of Rule 11 is to deter baseless filings in district court."). However, "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). Rule 11 sanctions should be reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Id.* at 1344. "Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).

United States District Court
Northern District of California

Under 28 U.S.C. § 1927, a court may impose sanctions on an attorney who unreasonably and vexatiously multiplies the proceedings. The statute is intended to deter harassing legal tactics and to compensate their victims. *See Haynes v. City and Cty. of San Francisco*, 688 F.3d 984, 987-88 (9th Cir. 2012). A court may award sanctions under § 1927 if the moving party shows (1) that opposing counsel acted unreasonably; (2) that, by doing so, counsel multiplied proceedings; and (3) that counsel acted with subjective bad faith. *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1121 (9th Cir. 1991).

**B.     Discussion**

The Court is quite familiar with the parties, counsel, and the claims in this action, having presided over significant motion practice since the complaint was filed more than two years ago. The Court has no difficulty in concluding that the requirements for sanctions under Rule 11 and § 1927 are not present here. Although the Court ultimately has dismissed Sumotext's claims against Mblox without leave to amend, the Court cannot say that any iteration of the complaint was objectively baseless. Mblox was in the thick of the transaction that led to the exclusion of Sumotext from the StarStar market, and the Court was not satisfied until this last round of motion practice that Sumotext ultimately could not state a claim against Mblox.

It is clear that Sumotext's counsel conducted a reasonable and competent inquiry before filing each of the pleadings, including the operative TAC. The fact that the Court was not persuaded by Sumotext's arguments regarding the significance of Mblox's alleged knowledge of the other defendants' intentions does not mean that those arguments were frivolous. The Court is satisfied that counsel did not violate Rule 11 by filing the TAC, or act with subject bad faith as required for sanctions under § 1927.

Mblox's motion for sanctions against Sumotext is DENIED.

**IV.     ORDER**

(1)     The motion to dismiss brought by Defendants Zoove, VHT StarStar, VHT, and StarSteve is DENIED;

(2)     The motion to dismiss brought by Mblox is GRANTED WITHOUT LEAVE TO AMEND;

17

(3) The motion for sanctions brought by Mblox is DENIED; and

(4) A Case Management Conference is set for 11:00 a.m. on May 24, 2018 to discuss the case schedule in light of the Court's rulings on the motions to dismiss.

Dated: April 19, 2018

_____
BETH LABSON FREEMAN
United States District Judge