**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| SUMOTEXT CORP., | Case No. 16-cv-01370-BLF |
| Plaintiff, | |
| v. | **ORDER RE DEFENDANTS' ADMINISTRATIVE MOTION TO SEAL DOCUMENTS AT TRIAL** |
| ZOOVE, INC., et al., | [Re: ECF 423] |
| Defendants. | |

Presently before the Court is Defendants' request to seal certain exhibits that the parties may offer at trial. ECF 423. These documents were previously designated as Attorneys' Eyes Only pursuant to the Protective Order in this case, and Defendants seek to maintain that restriction throughout trial. ECF 423 at 2; *see* ECF 205. Plaintiff Sumotext Corp. ("Sumotext") opposes sealing. ECF 428. Having reviewed the parties' submissions and the applicable sealing law, the Court GRANTS IN PART and DENIES IN PART Defendants' administrative motion to seal.

## I. LEGAL STANDARD

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). As the Ninth Circuit has explained, this is a "common law right," *United States v. Doe*, 870 F.3d 991, 996 (9th Cir. 2017), reflecting the American judicial system's longstanding commitment to "the open courtroom," *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014). Accordingly, court records are generally subject to "a strong presumption in favor of access." *Id.* (internal quotation marks omitted). In order to justify sealing such records, a litigant must show "compelling reasons" that "outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178 (internal quotation marks

omitted). Although a lesser showing of "good cause" suffices to seal documents not "more than tangentially related to the underlying cause of action," that narrow "exception" is plainly inapplicable to trial exhibits. *Ctr. for Auto Safety*, 809 F.3d at 1099. "[T]he resolution of a dispute on the merits" at trial "is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events." *Kamakana*, 447 F.3d at 1179 (internal quotation marks omitted). In order to justify sealing the exhibits at issue, then, Defendants must meet "the high threshold of showing that 'compelling reasons' support secrecy." *Id.* at 1180; *accord FTC v. DIRECTV, Inc.,* No. 15-CV-01129-HSG, 2017 WL 840379, at *1 (N.D. Cal. Mar. 3, 2017).

Compelling reasons justifying the sealing of court records generally exist "when such 'court files might . . . become a vehicle for improper purposes,'" *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598), such as: "to gratify private spite, promote public scandal, circulate libelous statements," *id.*; "to release trade secrets," *id.*; or "as sources of business information that might harm a litigant's competitive standing," *Ctr. for Auto Safety*, 809 F.3d at 1097 (quoting *Nixon*, 435 U.S. at 598). On the other hand, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1178–79. The party seeking to seal a judicial record bears the burden of "articulat[ing] compelling reasons supported by specific factual findings." *Id.* at 1182 (internal quotation marks omitted). The court must then "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Ctr. for Auto Safety*, 809 F.3d at 1097 (internal quotation marks and alterations omitted).

In addition, in this district, all parties requesting sealing must comply with Civil Local Rule 79–5. That rule requires, *inter alia*, the moving party to "establish ... that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law." Civ. L.R. 79–5(b). The request must also "be narrowly tailored to seek sealing only of sealable material." Civ. L.R. 79–5(b). Section (d) lays out the procedural requirements for an administrative motion to seal, namely, a "declaration establishing that the document sought to

be filed under seal, or portions thereof, are sealable," a proposed order that "lists in table format each document or portion thereof that is sought to be sealed," and an "unredacted version of the document" that "indicate[s], by highlighting or other clear method, the portions of the document that have been omitted from the redacted version." Civ. L.R. 79–5(d).

## II.  DISCUSSION

Defendants move to seal five documents on the parties' joint trial exhibit list pursuant to Civil Local Rule 79-5.  Specifically, Defendants seek to seal all five exhibits in their entirety.  The Court addresses each exhibit in turn below.

First, the Court DENIES Defendants' request to seal ECF 423-2, a 2016 email between StarStar Mobile and a customer "containing information relating to pricing paid by a ** customer," ECF 423-1 ¶ 2.  It is clear that price terms may be sealable.  In *In re Electronic Arts*, 298 Fed. Appx. 568, 569 (2008), the Ninth Circuit held that "pricing terms, royalty rates, and guaranteed minimum payment terms" in a licensing agreement constituted "business information that might harm a litigant's competitive strategy" and, as such, should have been sealed under the compelling reasons standard.  The court further observed that such information "falls within the definition of 'trade secrets,'" which "may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* (quoting Restatement of Torts § 757, cmt. b).  And in *Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214, 1223 (2013), the Federal Circuit held that a trial court in this district had abused its discretion in refusing to seal portions of documents "containing detailed product-specific financial information, including costs, sales, profits, and profit margins."

The Court nevertheless finds that Defendants have failed to establish compelling reasons for sealing ECF 423-2.  Although Defendants characterize the email as a "pricing discussion[] with [a] StarStar Mobile customer[]," the email discusses only historical prices that the customer had previously paid for Sumotext's services.  Although such information might be relevant to Defendants' pricing decisions, the email itself reveals nothing about the prices Defendants offered to their customers.  In other words, the email contains Sumotext's pricing information, not

Defendants'. Sumotext, for its part, does not seek to seal the email. ECF 428 at 2-3. The Court also notes that the prices are historical and not current; hence, the potential for future harm is not obvious. *See DIRECTV, Inc.*, 2017 WL 840379, at *2. Meanwhile, Defendants have failed to explain how disclosure would cause significant competitive harm to them with any specificity. Under these circumstances, the compelling reasons standard has not been met.

Second, the Court GRANTS the request to seal ECF 423-3. This exhibit is a due diligence report about Defendant Zoove, Inc. ("Zoove"). According to Defendants, it "contains highly detailed financial information concerning Zoove that would be damaging if known, even several years after the fact." ECF 423-1 ¶ 3. The Court is persuaded that is the case. Due diligence reports are commonly prepared by companies considering an acquisition and thus typically involve detailed confidential data about the target business. Having reviewed the exhibit, the Court confirms that it contains, *inter alia*, the names of customers, *see, e.g.*, ECF 423-3 at 1; itemized costs, *see, e.g.*, *id.* at 2; invoice numbers and amounts, *see, e.g.*, *id.* at 6; a monthly P&L from 2014 to 2015, *see, e.g.*, *id.* at 23-26; accounts receivable, by customer, *see, e.g.*, *id.* at 36-37; an annotated list of fixed assets, *see, e.g.*, *id.* at 60-78. These are precisely the kinds of sensitive financial information that courts in this Circuit have found sealable under *In re Electronic Arts* and *Apple v. Samsung*. *See, e.g.*, *Cox v. Roadrunner Intermodal Servs.*, LLC, No. 117CV01056DADBAM, 2019 WL 3202922, at *2 (E.D. Cal. July 16, 2019) ("Courts have found it appropriate to redact private financial information of competitive value."); *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, No. 14-CV-02864-JD, 2016 WL 4091388, at *3 (N.D. Cal. Aug. 2, 2016) (granting motion to seal "specific customer names and the percentage of business to those customers"); *Van v. Language Line Servs., Inc.*, No. 14-CV-03791-LHK, 2016 WL 3566980, at *2 (N.D. Cal. June 30, 2016) (sealing "the identities of Defendants' clients, billing rates, billing amounts"); *In re ConAgra Foods, Inc.*, No. CV1105379MMMAGRX, 2014 WL 12577132, at *4 (C.D. Cal. July 11, 2014) (granting motion to seal "internal financial information," such as a P&L for fiscal years 2008 to 2014). And although Defendants ask to seal the entire exhibit, the Court is satisfied that it does not include significant amounts of non-sealable information and that, consequently, the request is not overbroad.

1    Plaintiff's only argument in opposition of sealing is that Defendants "do not attempt to

2    protect other financial spreadsheets and contracts with customers," wherefore Plaintiff accuses

3    Defendants of "cherry-pick[ing] documents." ECF 428 at 3. But the Court will not fault

4    Defendants for narrowly tailoring their request or speculate as to their motives for doing so.

5    Where, as here, the Court has found that the document contains sealable business information, it

6    would create perverse incentives to suggest that a narrow request undermines the need for sealing.

7    The Court thus rejects this argument as to all the exhibits at issue in this motion.

8    Third, the Court GRANTS the request to seal ECF 423-4, an amendment to a Reseller

9    Agreement between StarStar Mobile and one of its current customers. The Court is typically

10   reluctant to seal entire commercial agreements, which often contain pages upon pages of

11   boilerplate terms and publicly information about the parties. It is difficult to see any competitive

12   harm resulting from disclosure of such information. At the same time, however, the Court

13   believes that essential, closely-negotiated or customer-specific terms are sealable under Ninth

14   Circuit law, as they could be used by competitors to undercut the litigant or by potential customers

15   to demand more favorable terms in negotiations. For instance, *In re Electronic Arts* involved

16   "pricing terms, royalty rates, and guaranteed minimum payment terms" in a licensing agreement.

17   Similarly, this Court has previously sealed "product rates, exclusivity requirements, and other

18   confidential terms," *Nicolosi Distrib., Inc. v. Finishmaster, Inc.*, No. 18-CV-03587-BLF, 2018

19   WL 3932554, at *3 (N.D. Cal. Aug. 16, 2018), and "confidentiality clauses, along with lists of the

20   parties' obligations and terms of payment," *Finisar Corp. v. Nistica, Inc.*, No. 13-CV-03345-

21   BLF(JSC), 2015 WL 3988132, at *5 (N.D. Cal. June 30, 2015).

22   The Court finds that the exhibit at hand primarily contains sealable contract terms. The

23   short, two-page agreement appears to be tailored to a particular—and current—customer,

24   regarding an idiosyncratic situation. It essentially lays out a specific payment schedule to deal

25   with a problem that arose. Although the Court could require Defendants to unredact certain

26   portions of the agreement, those portions would be too insignificant to have any probative value.

27   The sealing request is, therefore, granted.

28   Fourth, the Court GRANTS the request to seal ECF 423-5. This exhibit is a spreadsheet

5

entitled "**Mobile Invoicing Schedule." The spreadsheet appears to list StarStar Mobile's customers, along with detailed information about the StarStar Mobile's contract with each customer. For instance, the spreadsheet displays the StarStar numbers leased, the contract termination date, the billing method, and monthly billing amounts for 2017 and 2018. Under the case law already discussed, this information is sealable financial and customer data. *See, e.g.*, *Van*, 2016 WL 3566980, at *2 (sealing "the identities of Defendants' clients, billing rates, billing amounts").

Fifth, the Court GRANTS the request to seal ECF 423-6, an internal email describing a deal that StarStar Mobile apparently proposed to one of its reseller customers. ECF 423-1 ¶ 6. This email lays out the key terms of a potential reseller agreement, akin to the one at ECF 423-4. Here, as there, the terms described are the essential parameters of the relationship, not incidental or secondary provisions. The email is therefore sealable for the same reason the agreement described therein would be.

## III.  ORDER

For the foregoing reasons, the Court rules on Defendants' administrative motion to seal as follows:

| Document | Portion to be sealed | Ruling |
|---|---|---|
| ECF 423-2, Bates # ZOOVE0006571 | Entire document | DENIED. |
| ECF 423-3 | Entire document | GRANTED. |
| ECF 423-4, Bates # VHTSTARSTAR0002628 | Entire document | GRANTED. |
| ECF 423-5 | Entire document | GRANTED. |
| ECF 423-6, Bates # VHTSTARSTAR0003810 | Entire document | GRANTED. |

If introduced at trial, the exhibits at ECF 423-3, 423-4, 423-5, and 423-6 will be sealed. Defendants have not specified the extent of sealing that they seek. Accordingly, in the absence of a specific request, the Court imposes the following protections: (1) the exhibits will not be filed on the public docket; (2) the exhibits will not be published to the gallery; and (3) witnesses who are

6

shown the exhibits will be subject to this order and advised by counsel to maintain the confidentiality of the information contained therein. However, (1) the exhibits will be published to the jury and to the counsel tables; (2) the courtroom will not be sealed; (3) witnesses will be permitted to testify orally about the exhibits in open court; and (4) the transcript will not be sealed.

In addition, all copies of the exhibits filed at ECF 423—including ECF 423-2—in support of the administrative motion to seal will remain under seal. These documents were filed for the sole purpose of enabling the Court to determine whether the documents meet the standard for sealing at trial. The public interest in accessing these documents will only be triggered if the exhibits are actually offered at trial; otherwise, they will be irrelevant to the proceedings.

Finally, the Court notes that this order concerns only the treatment of the above-listed exhibits at trial; it does not affect the designation of the exhibits as Attorneys Eyes Only ("AEO"). The Protective Order clearly states that "the confidentiality obligations imposed by [the Protective Order] shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs"—"even after final disposition of this litigation." ECF 205 at 3. The Court has not been presented with a ripe motion to lift or otherwise modify the Protective Order, ECF 205, as to these exhibits. *See, e.g.*, *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-00106-LRH, 2015 WL 3721687, at *1 (D. Nev. June 12, 2015). Indeed, Plaintiff does not appear to have challenged the AEO designation in accordance with the process described in the Protective Order, *see* ECF 205 at 6-7. The Protective Order thus remains binding.

**IT IS SO ORDERED.**

Dated: February 20, 2020

BETH LABSON FREEMAN
United States District Judge